**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | |
|---|---|
| SUSAN BROWN, | |
| Plaintiff, | |
| | Civil Action No.: |
| v. | |
| GEORGIA DEPARTMENT OF CORRECTIONS, | 1:21-cv-00089 |
| Defendant. | **JURY TRIAL DEMANDED** |

## COMPLAINT

COMES NOW Plaintiff Susan Brown and brings this action pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.*, as amended, the Rehabilitation Act of 1973, 29 U.S.C. § 701, *et seq.*, and the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.* Plaintiff alleges that Defendant Georgia Department of Corrections subjected Plaintiff to discrimination based on disability, including through its failure to provide a reasonable accommodation and through violation of requirements concerning inquiries about and confidentiality of disability related information, subjected Plaintiff to retaliation after she engaged in protected activities, and interfered with her rights under the Family and Medical Leave Act, respectfully showing the Court as follows:

### JURISDICTION AND VENUE

1.

This Court has original jurisdiction over the subject matter of this civil action pursuant to 28 U.S.C. §§ 1331 & 1343 and the enforcement provisions of the Americans with Disabilities Act, the Rehabilitation Act, and the Family and Medical Leave Act.

2.

Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Plaintiff was employed, and the events underlying this action occurred, in Pelham, Mitchell County, Georgia, which is located within this judicial district.

## PARTIES

3.

Plaintiff Susan Brown (hereinafter, "Plaintiff" or "Brown") is a citizen of the United States and a resident of Georgia.  At all times relevant to this suit, Ms. Brown was employed with Defendant Georgia Department of Corrections.

4.

At all relevant times, Ms. Brown was considered a covered, non-exempt employee under the Americans with Disabilities Act and the Rehabilitation Act.

5.

Defendant Georgia Department of Corrections (hereinafter, "Defendant") is a department and political subdivision of the State of Georgia.  Defendant may be served by delivering a copy of the Summons and Complaint to its Commissioner, Timothy C. Ward, at Defendant's headquarters, located at 7 Martin Luther King, Jr. Drive, Suite 543, Atlanta, Fulton County, Georgia 30334.

6.

Defendant has employed far in excess of fifteen employees in every week of 2020 and preceding years and is otherwise a covered entity and employer within the meaning of the Americans with Disabilities Act.

7.

Defendant is a covered employer under the Rehabilitation Act because Defendant receives federal grants of assistance and otherwise has contracts with the federal government.

8.

Defendant is a public agency of the State of Georgia, and is considered a covered employer pursuant to the Family and Medical Leave Act.

**STATEMENT OF FACTS**

9.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 8, as if the same were set forth herein.

10.

Ms. Brown began her employment with Defendant in May 2013, where Ms. Brown is *currently* employed as a Maintenance Secretary – Admin Support 3 in the Maintenance Department at Defendant's Autry State Prison.

11.

At all times at issue, Ms. Brown's performance in her position has been exemplary.  Ms. Brown far exceeded the qualifications for this position, and she has been successfully performing her job throughout her tenure.

12.

Ms. Brown has been diagnosed with post-traumatic stress disorder (hereinafter, "PTSD") and anxiety, stemming from an incident in which an individual, who had previously been an inmate in Defendant's custody at Autry State Prison, broke into her home and robbed Ms. Brown of her belongings.

13.

PTSD is a mental health condition that is triggered by a terrifying or traumatic incident that causes individuals like Ms. Brown to experience flashbacks, nightmares, and anxiety when placed in a situation that reminds the person about the traumatic event.  PTSD causes individuals like Ms. Brown to have a reduced ability to concentrate or remain attentive, manage their time, and organize, plan, and prioritize tasks.  PTSD also results in memory loss, fatigue, mental confusion, and intolerance to stress.  As a result, PTSD substantially limits major life activities such as the ability to work.

14.

Ms. Brown also suffers from a medical condition related to her thyroid gland that results in increases in blood pressure and a weakened immune system.  The systems related to this condition are exacerbated by stressful situations, exposure to abnormal levels of bacteria and viruses, and even x-rays.  This condition has the potential to, and does, substantially impair almost all of Ms. Brown's major life activities, as defined by the Americans with Disabilities Act.

15.

Defendant was aware of Ms. Brown's medical conditions.

16.

The aforementioned medical conditions in no way limited Ms. Brown's ability to perform the essential functions of her position.

17.

The Maintenance Department at Autry State Prison, where Ms. Brown has been assigned to work for the majority of her tenure, is located behind and outside of the secure area of the prison. As a result, Ms. Brown was not required to pass through Defendant's security screening area and

access the area of the prison where inmates are housed in order for Ms. Brown to report for work or perform any of her job functions.

18.

Instead, when Ms. Brown reported for work each day, she would enter onto Defendant's property from the public road, immediately entering a parking area.  Ms. Brown would park her vehicle and join her co-workers in one of Defendant's passenger vans.  The van would then exit the parking area, transport the employees down the public road, and then re-enter Defendant's property using a service road that leads to out buildings, including where the Maintenance Department is located.

19.

By Summer 2019, Ms. Brown had never been asked to enter the secure area of the prison to perform any of her job duties, or for any reason whatsoever during her prior six years of employment.   Around that time, then-Warden Walter Berry asked Ms. Brown and other administrative employees to assist with tasks on two occasions that required entering the prison through the screening area.  Ms. Brown complied with the initial request, but later met with Warden Berry and explained her medical concerns and asked to be excused from entering the secure area of the prison.

20.

Soon thereafter, Ms. Brown discussed this incident with her physician.  Ms. Brown and her doctor talked about the fact that Ms. Brown should not be entering through the x-ray machines in the screening area and interacting with the general population of the prison due to her medical conditions and her resulting compromised immunity.  They also discussed how interacting with the general population of the prison exacerbated Ms. Brown's symptoms related to her PTSD.

21.

As a result, Ms. Brown's doctor provided her with a note for Defendant, recommending and asking that Ms. Brown not be required to undergo x-ray screening or enter the prison because of her medical conditions.

22.

Ms. Brown provided the doctor's note to then-Warden Berry, who then consulted with Defendant's Regional Director, and issued a memo to Ms. Brown's personnel file on August 20, 2019, excusing her from x-ray screening and entering the facility.

23.

Defendant provided Ms. Brown with the accommodation that she requested for her disabilities for a period of approximately six months.

24.

On February 27, 2020, the new Warden (hereinafter, "Warden Meyers") and the Deputy Warden of Administration (hereinafter, "Deputy Warden Ward") abruptly approached Ms. Brown for a meeting without providing her any prior notice.

25.

During this meeting, Warden Meyers and Deputy Warden Ward told Ms. Brown that she was being placed on administrative leave with pay, effective immediately, because Ms. Brown was purportedly required to obtain an update for the doctor's excuse that she had submitted six months earlier.

26.

There had been no change to Ms. Brown's medical condition, and Defendant's policies do not require employees to update such documentation from their medical providers every three months, as Ms. Brown had been told.

27.

Warden Meyers and Deputy Warden Ward told Ms. Brown that Ms. Brown had until March 6, 2020, to submit updated documentation from her doctor.

28.

Ms. Brown was told that she would be subjected to disciplinary action if she failed to do as directed.

29.

Ms. Brown was immediately escorted off of Defendant's property and sent home.

30.

The very next day, February 28, 2020, Ms. Brown sent an email to Warden Meyers to advise him that Ms. Brown had secured an appointment with her doctor on March 5, 2020.

31.

At some point prior to her appointment, one of Defendant's employees in the Human Resources Department contacted Ms. Brown's physician, attempting to get information and/or documentation about Ms. Brown's medical condition.

32.

Ms. Brown never authorized Defendant to contact her medical providers or to request any information from them; nor was she requested to provide such a release or authorization.

33.

On March 6, 2020, Ms. Brown sent an email to Warden Meyers with an updated letter from her doctor that Defendant had requested.

34.

Along with the new doctor's note, Ms. Brown also attached a letter from counsel, advising Warden Meyers that Ms. Brown and her doctor were requesting a reasonable accommodation and that Defendant engage in the interactive process. The letter also advised Warden Meyers of the violations of Ms. Brown's rights under the Americans with Disabilities Act.

35.

Soon thereafter, Personnel Manager Lisa Whitfield contacted Ms. Brown, advising Ms. Brown that she needed to meet with Warden Meyers and Deputy Warden Ward on March 9, 2020.

36.

On March 9, 2020, the two supervisors met with Ms. Brown in the parking lot at Autry State Prison. They handed Ms. Brown a document entitled "Activity Analysis," and demanded that she take the form back to her doctor to be completed.

37.

The Activity Analysis purportedly contained a description and analysis of Ms. Brown's job duties, but it was inconsistent with Ms. Brown's actual, official job description and had clearly been prepared in response to Ms. Brown's new doctor's note.

38.

This Activity Analysis was designed and intended to be inconsistent with Ms. Brown's requested accommodations.

39.

On March 12, 2020, Ms. Brown, through her attorney, sent written correspondence to Warden Meyers, advising him of the problems with the Activity Analysis.

40.

The letter also explained that Ms. Brown was cleared to work with accommodations consistent with her physician's correspondence.

41.

The letter requested that Defendant allow Ms. Brown to return to work immediately.

42.

On March 16, 2020, Personnel Manager Whitfield called Ms. Brown once again to advise her that she could return to work the next day since Ms. Brown's physician had returned the completed Activity Analysis.

43.

Ms. Brown was shocked by this information because she had not seen her doctor since the March 9, 2020 meeting and had not provided his office with the form to complete.

44.

For a second time, Defendant apparently contacted Ms. Brown's physician without her knowledge, authorization, or consent.

45.

On March 17, 2020, the physician sent correspondence to Defendant, explaining that the Activity Analysis had been returned in error while the doctor had been out of the office to self-quarantine for COVID-19 related symptoms.  In this letter, the physician also attempted to clarify

that Ms. Brown was able to work if she were provided with the accommodations requested in the March 5, 2020 correspondence.

46.

By March 19, 2020, neither Warden Meyers, nor any of Defendant's representatives, had contacted counsel in response to the two letters.

47.

By March 19, 2020, none of Defendant's employees had reached out to Ms. Brown.  As a result, she contacted Warden Meyers, who responded that he would follow up as soon as possible.

48.

Warden Meyers never followed up with Ms. Brown.

49.

Ms. Brown soon realized that she had not been receiving compensation by way of paid administrative leave as of March 16, 2020.

50.

Around the same time, Defendant sent its non-essential employees in positions like Ms. Brown's home for telework due to shutdowns related to the COVID-19 pandemic.

51.

Ms. Brown was never provided with the opportunity to telework, despite her subsequent and repeated requests to do so.

52.

On March 28, 2020, Ms. Brown received a letter from Autry State Prison by Certified Mail. This correspondence included paperwork for Ms. Brown to complete in order to receive leave pursuant to the Family and Medical Leave Act.

53.

Ms. Brown never requested leave pursuant to the Family and Medical Leave Act.

54.

Ms. Brown never needed leave pursuant to the Family and Medical Leave Act.

55.

During the period at issue, Ms. Brown was never "incapacitated" as defined under the Family and Medical Leave Act.

56.

On April 6, 2020, Ms. Brown submitted a Charge of Discrimination to the Equal Employment Opportunity Commission, alleging that she had been discriminated against based on disability and that Defendant had failed to provide her with a reasonable accommodation.

57.

Three days later, Ms. Brown's attorney sent notice to Defendant's Human Resources Department, advising Defendant of Ms. Brown's Charge of Discrimination, as well as violations of her rights under the Family and Medical Leave Act.

58.

Once again, this letter asked that Ms. Brown be taken off administrative leave and returned to work immediately.

59.

Defendant again failed to respond to the letter from counsel.  Instead, an employee in Defendant's Southwest Region Human Resources Department contacted Ms. Brown to invite her to a meeting to discuss her accommodations.

60.

The HR representative told Ms. Brown that the meeting would be held in a conference room in the secure area of Autry State Prison.

61.

Defendant selected this location despite its actual knowledge that Ms. Brown and her doctor had requested for her not to be required to access such a location because it required a security screening with x-ray machines to which her physician asked that she not be subjected.

62.

Defendant selected this location solely for the purposes of subjecting Ms. Brown to additional harassment, humiliation, and embarrassment.

63.

Alternatively, Defendant selected this location to intentionally pose a risk to Ms. Brown's health and safety.

64.

Ms. Brown asked that the meeting instead be held at Defendant's offices in Forsyth, Georgia, and that she be permitted to have her counsel present during the meeting.

65.

Defendant failed to respond to Ms. Brown's request by the scheduled time of the meeting.

66.

As a result, this meeting was never held.

67.

On July 15, 2020, Ms. Brown, through counsel, sent correspondence to Defendant's Commissioner, advising the Commissioner that Defendant was engaged in on-going violations of Ms. Brown's rights under the Americans with Disabilities Act and Family and Medical Leave Act.

68.

Since July 2020, Ms. Brown has made numerous additional requests that Defendant allow her to return to work and provide a reasonable accommodation.

69.

At this time, Ms. Brown remains employed by Defendant.

70.

Ms. Brown has remained able and willing to go to work and perform the essential functions of her job.

71.

Yet, at this time, Ms. Brown has remained out of work for 439 days.

72.

For the vast majority of time that Ms. Brown has been on leave, she has not received any compensation from Defendant.

Procedural/Administrative Background

73.

On or about April 6, 2020, Ms. Brown submitted her Charge of Discrimination to the Equal Employment Opportunity Commission (hereinafter, "EEOC"), alleging that she had been subjected to discrimination based on disability in violation of the Americans with Disabilities Act. The EEOC assigned Ms. Brown Charge Number 410-2020-04982.

74.

Defendant had notice of Ms. Brown's Charge of Discrimination, participated in the proceedings before the EEOC, and was represented by counsel during said proceedings.

75.

On June 10, 2020, Ms. Brown amended her Charge of Discrimination to clarify her disability discrimination and failure to accommodate claims and to add claims for retaliation and other violations of Ms. Brown's rights under the Americans with Disabilities Act.

76.

On December 4, 2020, Ms. Brown requested that the EEOC issue a Right to Sue Letter, which it did on February 10, 2021. Ms. Brown, through counsel, received the Notice of Right to Sue on February 12, 2021.

77.

Ms. Brown has exhausted her administrative remedies as to her first Charge of Discrimination, and she is filing the instant action within ninety days of the EEOC's issuance and her receipt of a Dismissal and Notice of Rights.

**COUNT I:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

78.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

79.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the

hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

80.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

81.

As alleged herein, Plaintiff has been employed with Defendant for approximately eight years and serves in the role of Maintenance Secretary – Admin Support 3.  Plaintiff has been performing her duties in that role, and she is otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

82.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

83.

Specifically, Plaintiff suffers post-traumatic stress disorder ("PTSD"), anxiety, and a condition related to her thyroid, which all individually and in the aggregate substantially limit several major life activities for Plaintiff such as being more susceptible to illness, increases in blood pressure, reduced ability to concentrate and remain attentive, manage her time, organize, and prioritize tasks.

84.

Defendant was aware of Plaintiff's disabilities.

85.

Beginning on or around February 27, 2020, and continuing to the present, Defendant

discriminated against Plaintiff by placing her on administrative leave, using accrued paid leave for a period of time and then placing Plaintiff on leave without pay and failing to provide Plaintiff with fringe benefits that Plaintiff was otherwise entitled, solely on the basis of Plaintiff's disabilities.

86.

Beginning on or around March 19, 2020, and continuing to the present, Defendant discriminated against Plaintiff by refusing to allow Plaintiff to work remotely and/or telework as Plaintiff's similarly situated coworkers without a disability were permitted to do.

87.

On or around April 29, 2020, Defendant subjected Plaintiff to harassment based on her disabilities when it invited Plaintiff to a meeting to discuss her request for an accommodation in a location that Defendant was aware was directly consistent with the accommodation that Plaintiff was requesting.

88.

Plaintiff has been injured by Defendant's discrimination based on disability, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT II:**
**DISCRIMINATION BASED ON DISABILITY**
**IN VIOLATION OF THE REHABILITATION ACT**

89.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

90.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

91.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

92.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

93.

For the reasons set forth in Count I, *supra*, and expressly incorporated herein, Defendant subjected Plaintiff to discrimination based on disability.

94.

Plaintiff has been injured by Defendant's discrimination due to disability, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

**COUNT III:**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**

95.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

96.

The Americans with Disabilities Act prohibits covered entities from "discriminating against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

97.

Discrimination based on disability includes an employer's failure to make a "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

98.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

99.

As alleged herein, Plaintiff has been employed with Defendant for approximately eight years and serves in the role of Maintenance Secretary – Admin Support 3.  Plaintiff has been performing her duties in that role, and she is otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

100.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

101.

Specifically, Plaintiff suffers post-traumatic stress disorder ("PTSD"), anxiety, and a condition related to her thyroid, which all individually and in the aggregate substantially limit several major life activities for Plaintiff such as being more susceptible to illness, increases in blood pressure, reduced ability to concentrate and remain attentive, manage her time, organize, and prioritize tasks.

102.

Defendant was aware of Plaintiff's disabilities.

103.

In August 2019, Plaintiff and her physician requested that, as a result of Plaintiff's disabilities, Defendant provide Plaintiff with a reasonable accommodation in the form of not subjecting Plaintiff to security screenings with devices that use x-rays and not requiring Ms. Brown to enter into the general population of the prison.

104.

While Defendant initially provided Plaintiff with the accommodations that she requested, Defendant abruptly stopped providing the accommodations on February 27, 2020, and forced Plaintiff on administrative leave.

105.

The accommodations requested by Plaintiff remained available, would have been effective, and would not have posed an undue hardship on Defendant.

106.

Defendant failed and refused to provide Plaintiff with the accommodations that she requested.

107.

Defendant also failed to engage in the interactive process to explore other accommodations that may have been available.

108.

On August 9, 2020, Defendant invited Ms. Brown to meet to discuss her requested accommodations in manner that was clearly inconsistent with Ms. Brown's medical needs, and with knowledge that Ms. Brown would have prevented from meaningful participation in the meeting.

109.

Plaintiff has been injured by Defendant's discrimination based on disability due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

**COUNT IV:**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION**
**IN VIOLATION OF THE REHABILITATION ACT**

110.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

111.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

112.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

113.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

114.

For the reasons set forth in Count III, *supra*, and expressly incorporated herein, Defendant discriminated against Plaintiff based on disability due to its failure to provide a reasonable accommodation.

115.

Plaintiff has been injured by Defendant's discrimination due to its failure to provide a reasonable accommodation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

### COUNT V:
### WRONGFUL INQUIRY AND DISCLOSURE OF CONFIDENTIAL INFORMATION IN VIOLATION OF AMERICANS WITH DISABILITIES ACT

116.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

117.

The Americans with Disabilities Act prohibits covered entities from requiring medical examinations and making inquiries as to whether the employee is disabled or the nature of the

disability, unless the examination or inquiry is shown to be job related and consistent with business necessity. 42 U.S.C. § 12112(d)(4).

118.

The Americans with Disabilities Act requires employers who gain information from a disability related examination or inquiry to treat such information as confidential. *Id.*

119.

"A plaintiff claiming wrongful disclosure of confidential medical information under the ADA must allege that: (1) the medical information that was disclosed was 'confidential'; (2) the information released was obtained through an entrance exam or disability-related inquiry; and (3) he suffered a tangible injury as a result of the disclosure." *Flamberg v. Israel*, No. 13-62698-CIV, 2014 WL 1600313, at *4 (S.D. Fla. Apr. 21, 2014) (citation omitted).

120.

As alleged herein, Defendant and Plaintiff are a covered, nonexempt employer and non-exempt employee under the ADA, respectively. See 42 U.S.C. § 12111.

121.

As alleged herein, Plaintiff was employed with Defendant for approximately eight years and serves in the role of Maintenance Secretary – Admin Support 3.  Plaintiff has been performing her duties in that role, and she is otherwise qualified and able to perform the essential functions of her job, with or without a reasonable accommodation.

122.

As alleged herein, Plaintiff has a disability, a history of a disability, and was perceived by Defendant as having a disability, that substantially limits a number of major life activities.

123.

Specifically, Plaintiff suffers post-traumatic stress disorder ("PTSD"), anxiety, and a condition related to her thyroid, which all individually and in the aggregate substantially limit several major life activities for Plaintiff such as being more susceptible to illness, increases in blood pressure, reduced ability to concentrate and remain attentive, manage her time, organize, and prioritize tasks.

124.

Defendant was aware of Plaintiff's disabilities.

125.

On or about March 12, 2020, Defendant submitted disability-related disclosures to Plaintiff's physician, without first obtaining Plaintiff's knowledge, authorization, or consent, and then released the information to other employees of Defendant.

126.

The manner in which Defendant gained this information caused Plaintiff's physician to unintentionally and inadvertently share information that was neither accurate nor intended to be shared by the physician.

127.

Plaintiff has been injured by Defendant's violation of requirements concerning disability-related inquiries and he confidentiality of such information, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages, reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT VI:
## WRONGFUL INQUIRY AND DISCLOSURE OF CONFIDENTIAL INFORMATION IN VIOLATION OF THE REHABILITATION ACT

128.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

129.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

130.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

131.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

132.

For the reasons set forth in Count V, *supra*, and expressly incorporated herein, Defendant violated Plaintiff's rights by making unauthorized disability-related inquiries and disclosing the information Defendant obtained to third-persons.

133.

Plaintiff has been injured by Defendant's violation of Plaintiff's right to be free from certain disability-related inquiries and examinations and for such information to remain

confidential, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

## COUNT VII:
## RETALIATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

### 134.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

### 135.

The Americans with Disabilities Act prohibits covered entities from discriminating against any individual because such individual has opposed any act or practice made unlawful by the Americans with Disabilities Act or because said individual has filed a Charge of Discrimination. 42 U.S.C. § 12203(a).

### 136.

The Americans with Disabilities Act prohibits covered entities from coercing, threatening or interfering with any individual in the exercise or enjoyment of her rights under the Americans with Disabilities Act.  42 U.S.C. § 12203(b).

### 137.

Beginning in August 2019, including in February 2020, Plaintiff attempted to exercise her rights provided by the Americans with Disabilities Act by requesting a reasonable accommodation for Plaintiff's disabilities.

### 138.

Beginning on February 27, 2020, Defendant discriminated against Plaintiff by placing her on administrative leave, using paid leave for a period of time and subsequently placing Plaintiff

on leave without pay and without benefits, solely on the basis of and because Plaintiff had requested a reasonable accommodation.

139.

Beginning on March 5, 2020, and continuing to the present, Plaintiff made numerous demands to be reinstated into her position, but Defendant has refused to reinstate Plaintiff solely on the basis that Plaintiff had requested a reasonable accommodation and made complaints about violation of her rights under the Americans with Disabilities Act.

140.

Beginning on March 12, 2020, Defendant retaliated against Plaintiff for requesting a reasonable accommodation and making complaints about the violation of her rights under the Americans with Disabilities Act by fabricating a list of job duties, which did not reflect Plaintiff's actual job functions or official job description, but were specifically created based on Plaintiff's disabilities and her requested accommodation and were otherwise intended to prevent Plaintiff from being able to work.

141.

Beginning on March 17, 2020, Defendant retaliated against Plaintiff for requesting a reasonable accommodation and making complaints about the violation of her rights under the Americans with Disabilities Act by refusing to allow Plaintiff to return to work after Plaintiff's physician had made it abundantly clearly that Plaintiff was able to work with accommodation.

142.

Beginning on March 19, 2020, Defendant retaliated against Plaintiff for requesting a reasonable accommodation and making complaints about the violation of her rights under the Americans with Disabilities Act by refusing to allow Plaintiff to work remotely and/or telework

as Defendant was allowing for Plaintiff's similarly-situated coworkers who had not requested a reasonable accommodation or made complaints about violations of their rights under the Americans with Disabilities Act.

143.

By April 6, 2020, Plaintiff had a good faith believe that Defendant had violated her rights. As a result, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, alleging that Defendant had discriminated against Plaintiff due to disability and failed to provide her with a reasonable accommodation.  Accordingly, Plaintiff's filing of a Charge of Discrimination was an activity expressly protected by the Americans with Disabilities Act.

144.

Beginning on or before April 9, 2020, when Defendant became aware that Plaintiff had filed a Charge of Discrimination, Defendant subjected Plaintiff to retaliation by failing and refusing to allow Plaintiff to return to work, solely on the basis that she had filed a Charge of Discrimination.

145.

On or around April 29, 2020, Defendant subjected Plaintiff to retaliation by inviting her to a meeting in a location that Defendant knew was inconsistent with the accommodations that Plaintiff had requested, solely because Plaintiff had requested a reasonable accommodation, complained internally about violations of her rights, and had filed a Charge of Discrimination.

146.

Plaintiff has been injured by Defendant's retaliatory conduct, and Plaintiff is entitled to all damages allowed under the Americans with Disabilities Act, including compensatory damages,

reinstatement, backpay, injunctive relief, punitive damages, and reasonable attorney's fees and costs of litigation, in an amount to be proven at trial.

## COUNT VIII:
## RETALIATION
## IN VIOLATION OF THE REHABILITATION ACT

147.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

148.

The Rehabilitation Act of 1973 prohibits discrimination based on disability in "any program or activity receiving Federal financial assistance or under any program or activity conducted by an Executive agency…" 29 U.S.C. § 794(a).

149.

Defendant, as a program receiving Federal financial assistance both directly and indirectly from the United States government, and Plaintiff, as an employee of Defendant, are a covered entity and individual, respectively, under the Rehabilitation Act.

150.

The Rehabilitation Act expressly incorporates the standards used in Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111, *et seq.* 29 U.S.C. § 794(d).

151.

For the reasons set forth in Count VII, *supra*, and expressly incorporated herein, Defendant subjected Plaintiff to retaliation after she engaged in activities protected by the Ameicans with Disabilities Act.

152.

Plaintiff has been injured by Defendant's retaliation, and Plaintiff is entitled to all damages available under the Rehabilitation Act, in an amount to be proven at trial.

### COUNT IX:
### VIOLATIONS OF RIGHTS UNDER
### FAMILY AND MEDICAL LEAVE ACT

153.

Plaintiff hereby pleads and incorporates by reference all of the allegations contained in Paragraphs 1 through 77, as if the same were set forth herein.

154.

At all times relevant to this Complaint, Defendant was a covered, non-exempt employer pursuant to the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*.

155.

According to the Family and Medical Leave Act, an employee may be entitled to take leave due to certain qualifying invents, including in pertinent part, "[b]ecause of a serious health condition that makes the employee unable to perform the functions of her position of such employee." 29 U.S.C. § 2612(a)(1).

156.

However, at all relevant times, Plaintiff neither had a serious health condition that made her unable to perform the functions of her position, nor was there any other reason that Plaintiff should have been entitled to leave under the Family and Medical Leave Act.

157.

Beginning on or after March 28, 2020, Defendant forced Plaintiff to take FMLA leave that Plaintiff neither requested nor needed.

158.

After Plaintiff notified Defendant's Commissioner on or about April 9, 2020 of the violation of Plaintiff's rights under the Family and Medical Leave Act, Defendant has since refused to reinstate Plaintiff into her position because of her complaint.

159.

As a result, Defendant has engaged in prohibited conduct under the Family and Medical Leave Act by interfering with, restraining, and a denying Plaintiff's rights and by discriminating against Plaintiff for complaining about violations of her rights.

160.

As a direct and proximate result of Defendant's wrongful acts and omissions, Plaintiff has sustained loss of earnings, suffered mental anguish, physical and emotional distress, humiliation and embarrassment, and the loss of professional reputation.

161.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(i), Defendant is liable for damages equal to the amount of wages, salary, employment benefits, and other compensation denied or lost to Plaintiff by reason of these violation, in an amount to be proven at trial.

162.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(iii), due to Defendant's willful violation of the Act and reckless disregard of whether Defendant's conduct was prohibited, Defendant is liable for an additional amount as liquidated damages, equal to the sum of the amount described in the preceding Paragraph, in an amount to be proven at trial.

163.

Pursuant to 29 U.S.C. § 2617(a)(1)(A)(ii), Defendant is liable for interest on all damages

awarded pursuant to the Family and Medical Leave Act, calculated at the prevailing rate, and in an amount to be proven at trial.

164.

Pursuant to 29 U.S.C. § 2617(a)(1)(B), Defendant is liable for such equitable relief as may be appropriate, including employment, reinstatement, and promotion.

**JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Susan Brown respectfully prays for the following relief:

1)      That Summons and Process be issued to Defendant Georgia Department of Corrections, and that said Defendant be served as provided by law;

2)      That this matter be tried before a jury;

3)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count I for discrimination based on disability, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

4)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count II for discrimination based on disability, and grant Plaintiff all relief allowable under the Rehabilitation Act;

5)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count III for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

6)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count IV for failure to provide a reasonable accommodation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

7)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count V for wrongful inquiry and disclosure of confidential information, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

8)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VI for wrongful inquiry and disclosure of confidential information, and grant Plaintiff all relief allowable under the Rehabilitation Act;

9)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VII for retaliation, and grant Plaintiff all relief allowable under the Americans with Disabilities Act;

10)      That judgment be awarded for and in favor of Plaintiff and against Defendant on Count VIII for retaliation, and grant Plaintiff all relief allowable under the Rehabilitation Act;

11)      That judgment be awarded for an in favor of Plaintiff and against Defendant on Count IX for violations of Plaintiff's rights under the Family and Medical Leave Act, and grant Plaintiff all relief allowable under the same, including but not limited to back pay,  liquidated damages, intertest, and equitable relief.

12)      For such other relief as this Court shall deem just and proper.

*[Signature Page Follows]*

Respectfully submitted, this 11th day of May, 2021.

KENNETH E. BARTON III
Georgia Bar No. 301171
JOHN M. MCCALL
Georgia Bar No. 778954
*Attorneys for Plaintiff*

COOPER, BARTON & COOPER, LLP
170 College Street
Macon, Georgia 31201
(478) 841-9007 telephone
(478) 841-9002 facsimile
keb@cooperbarton.com
jmm@cooperbarton.com